UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON F.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of the Social Security Administration,[2] <br><br> Defendant. | Case No.: 3:22-cv-01623-VET <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** <br><br> **[Doc. No. 23]** |

---

[1] Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).
[2] Martin O'Malley is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

1

## I. INTRODUCTION

Plaintiff Shannon F. ("Plaintiff") seeks review of the Commissioner of Social Security's Administration's ("Commissioner") denial of her application for disability insurance and supplemental security income benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review, seeking resolution of the following issue: whether the Administrative Law Judge ("ALJ") properly assessed Plaintiff's Residual Functional Capacity ("RFC"), and specifically whether the ALJ erred in failing to assess any manipulative limitations.

Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the Court **AFFIRMS** the Commissioner's final decision.

## II. BACKGROUND

### A. Procedural History

On July 30, 2018, Plaintiff applied for disability insurance and supplemental security income benefits, alleging a period of disability beginning on March 29, 2018. AR 494, 496.[3] The Commissioner denied her claim initially on August 14, 2018, and upon reconsideration on May 17, 2019. AR 370, 377. Plaintiff requested a de novo hearing before an ALJ on June 3, 2019. AR 387. ALJ Howard Treblin held a hearing on July 21, 2021. AR 34–62.

On July 30, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 11–28. On August 16, 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR 1–7. On October 20,

---

[3] "AR" refers to the Administrative Record lodged on February 1, 2023. Doc. No. 12. The Court's citations to the AR use the page references on the original document rather than the page numbers generated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

2022, Plaintiff initiated this action seeking judicial review of the ALJ's decision. Doc. No. 1. The parties filed the Joint Motion on May 31, 2023. Doc. No. 23.

### B. Summary of the ALJ's Decision

The ALJ followed the Commissioner's five-step sequential evaluation process to determine whether Plaintiff was disabled. *See* AR 12–13; 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 29, 2018, the alleged onset date. AR 13. At step two, the ALJ found that Plaintiff had multiple severe mental and physical impairments. AR 14. Her severe physical impairments included, among others, "psoriatic arthritis mainly affecting the left hand and wrist; inability to flex the left index finger due to deformity." *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those in the Commissioner's Listing of Impairments. AR 15.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity to:

> lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours total in an 8-hour workday; sit for 6 hours total in an 8-hour workday; occasionally climb ramps, stairs, ladders, ropes or scaffolds, balance, stoop, kneel, crouch, or crawl.

AR 16. According to the ALJ, Plaintiff's "neck pain, back pain, SI joint pain, right hip pain, left wrist pain, left finger pain and inability to flex the left index finger" supported a limitation of light work. AR 26.

At step four, based on Plaintiff's RFC and testimony, and the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform her past relevant work as a hostess, leasing agent, administrative clerk, and customer service clerk (both as actually done and as generally done in the national economy). AR 27. Therefore, the ALJ found that Plaintiff was not under disability, as defined by the Social Security Act, and did not proceed to step five. *Id.*

## III. STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

/ / /

/ / /

/ / /

/ / /

## IV. DISCUSSION

### A. Whether the ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

The RFC is the maximum a claimant can do in the workplace despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis in original). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The Court will affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, as part of his RFC assessment, the ALJ concluded that:

> No manipulative limits were indicated with normal examination of the wrists and hands other than inability to flex the left index finger but otherwise normal range of motion of the hands, no swelling of the hands, no inflammation of the hands, no tenderness of the hands, normal range of motion of the wrists with no deformity, no swelling of the wrists, no inflammation of the wrists, no tenderness of the wrists, no muscle atrophy, no spasm.

AR 27. The ALJ also noted that Plaintiff was able to perform all her past relevant work with the deformity in her left index finger. *Id.* In finding no manipulative limitations, Plaintiff argues that the ALJ "committed multiple reversible errors." Doc. No. 23 at 21. The Court disagrees.

First, Plaintiff suggests that the ALJ improperly interpreted raw medical data, including updated x-rays. Doc. No. 23 at 15. The record does not support such a conclusion. For instance, the record reflects that the impressions and findings of the radiologist

regarding updated x-ray evidence were available to the ALJ. *See* AR 1719, 1731. The ALJ describes those findings in his decision. AR 20. Moreover, to the extent the ALJ evaluated and summarized medical evidence in formulating the RFC, applicable regulations explicitly task ALJs with determining a claimant's RFC based on a review of the entire record. *See* 20 C.F.R. §§ 416.945, 416.946. The Ninth Circuit also recognizes that the ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)); *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (finding that ALJ did not rely on lay interpretation of medical evidence and instead "properly considered all of the various types of evidence in the medical record, including objective evidence such as x-rays, [plaintiff's] treatment history, and clinical findings, and properly translated and incorporated this evidence into an RFC finding"). Thus, the ALJ necessarily and appropriately analyzed the available medical evidence.

Second, Plaintiff contends that the ALJ ignored or misinterpreted the medical evidence. Plaintiff initially faults the ALJ for purportedly misinterpreting findings from a May 2, 2019 orthopedic examination by Dr. Herman Schoene. Doc. No. 23 at 16 (characterizing the ALJ's recitation as "inaccurate accounting"). Dr. Schoene performed a series of tests and measurements, including measuring Plaintiff's forearm circumference and grip strength in both hands. AR 1108. Plaintiff faults the ALJ *and* Dr. Schoene for "overlooking" and "ignoring" the findings of the forearm circumference and strength tests. Doc. No. 23 at 16. Except Dr. Schoene made additional findings regarding Plaintiff's hands, including that Plaintiff is unable to flex her left index finger, but the range of motion of her hands is otherwise normal. AR 1108. Dr. Schoene also found no evidence of swelling, palpable mass, inflammation, or tenderness in her hands, or muscle atrophy or spasm. *Id.* Based on the entirety of his examination, Dr. Schoene found no manipulative limitations. AR 1110. The ALJ found Dr. Schoene's opinions persuasive and noted that Plaintiff did not complain of any pain in her hands or feet due to psoriatic arthritis. AR 24. Plaintiff does not suggest that Dr. Schoene was unqualified to interpret his own tests, or

why his opinions are otherwise unpersuasive. On the contrary, it was appropriate for the ALJ to rely on Dr. Schoene's interpretation of the medical testing and measurements.

Plaintiff further argues that the ALJ erred by ignoring evidence, including rheumatological examinations from 2018–2020, "positive Finkelstein's testing bilaterally and evidence of erosive changes, swelling and limited motion involving the right hand." Doc. No. 23 at 16, 18. Plaintiff seemingly reaches this conclusion because the ALJ does not cite or reference every medical finding concerning Plaintiff's hands. However, the ALJ is not required to discuss every piece of evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."). Nor is the ALJ required to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Bayliss*, 427 F.3d at 1217.

Here, the ALJ's detailed summary and analysis demonstrates that he considered the available evidence, including updated x-ray evidence and rheumatology records from 2018, 2019, and 2020. AR 19–20. The ALJ accurately represented the findings of the medical consultants and the opinion of the consultative examiner, all of whom found no manipulative limitations. The fact that these physicians did not review all the available evidence does not make their conclusions unpersuasive. *See Maliha K. v. Saul*, No. 19-CV-00877-MAA, 2020 U.S. Dist. LEXIS 78034, at *18 (C.D. Cal. May 4, 2020) ("[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence.").

Further, in evaluating Plaintiff's hands, the ALJ relied on six different physical exams from February 2018, March 2018, July 2018, September 2019, December 2019, and April 2020. AR 20, 711–15, 742–746, 756–759, 1117, 1466, 1705. And, as Plaintiff notes, the ALJ references records of Plaintiff's pain and swelling in her left wrist, an October 2019 ultrasound of Plaintiff's wrists showing "significant inflammation in the radiocarpal and intercarpal joints," and examinations of Plaintiff's hands showing "tenderness in the

left hand and swelling left carpometacarpal." AR 19–20 (citing AR 1119, 1482, 713, 759). The ALJ also noted changes in her medication. AR 20.

Plaintiff highlights evidence in the record that purportedly shows the ALJ erred in finding no manipulative limitations. Except Plaintiff does not show how such evidence supports specific functional limitations that the ALJ failed to assess. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)) ("The claimant bears the burden of proving that she is disabled."). Nor does a comparison of the updated x-ray evidence of Plaintiff's hands, which Plaintiff highlights, actually show material changes. *Compare* AR 815–817 (2018 x-rays) with AR 1731 (2020 x-rays).

Moreover, the ALJ considered the Plaintiff's testimony. Plaintiff did not testify to any specific limitations concerning her right hand beyond stating that she could "lift up to a gallon of milk with her right hand[.]" AR 26, 40. She further testified that the psoriatic arthritis primarily affects her left hand, and she primarily uses her right hand. AR 19–20, 40. And while she expressed concern that arthritis might be moving into her right hand, Plaintiff testified that her left hand was the "problem." AR 41, 46. Plaintiff also testified that she does light household chores, including laundry and vacuuming, which involve lifting greater than a gallon of milk. AR 19, 51–52. The ALJ further noted that although Plaintiff was unable to flex her left index finger, she was able to perform all her past relevant work with that deformity. AR 20.

In sum, the ALJ reviewed the available evidence and concluded that Plaintiff could perform light work, considering, among other limitations, her left wrist pain, left finger pain, and inability to flex the left index finger. AR 26. The Court finds that the ALJ rationally interpreted the medical evidence relating to Plaintiff's hands in concluding that no manipulative limitation was indicated. Plaintiff may disagree with that conclusion and advocate for an alternative interpretation, but "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Owen v. Saul*, 808 F. App'x 421,

423 (9th Cir. 2020) ("Resolving conflicts is the ALJ's responsibility and prerogative . . ."). The Court will not second guess the ALJ's reasonable interpretation, even if the evidence might support alternative inferences more favorable to Plaintiff.

### B. Plaintiff Forfeited Any Claim Based on The ALJ's Duty to Develop the Record

Lastly, Plaintiff contends that the ALJ had a duty to develop the record and failed to do so. Doc. No. 23 at 19. Plaintiff waived this argument.

"[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel*, 172 F.3d at 1115. Courts "will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice[.]" *Id.* In this Circuit, courts repeatedly hold that a party forfeits any claim based on an alleged failure to develop the record when the party concedes that the record in complete. *See, e.g.*, *Grant M. v. Kijakazi*, No. 20-CV-1973-DEB, 2023 U.S. Dist. LEXIS 90040, at *9 (S.D. Cal. Mar. 29, 2023) ("In addition, Plaintiff's attorney confirmed the record was complete, which relieved the ALJ of any special duty of diligence.") (citing *Chaudry v. Astrue*, 688 F.3d 661, 669 (9th Cir. 2012)); *Ryan Patrick A. v. Berryhill*, No. EDCV 17-2526-JPR, 2019 U.S. Dist. LEXIS 52048, at *15–*16 (C.D. Cal. Mar. 27, 2019) (issue forfeited where plaintiff was represented by counsel, who twice stated at the administrative hearing that the record was complete); *Chavez v. Berryhill*, No. 18-cv-05683-JSC, 2019 U.S. Dist. LEXIS 167329, at *31–*32 (N.D. Cal. Sept. 27, 2019) (finding that plaintiff waived argument that "Commissioner failed to develop the record" when counsel stated "unequivocally" during administrative hearing that record was "complete"); *Gonzalez v. Kijakazi*, No. 21-CV-01676-SKO, 2023 U.S. Dist. LEXIS 168461, at *14 (E.D. Cal. Sept. 21, 2023) ("Here, because counsel stated that the record was complete, the issue is not properly preserved for appeal."). Here, Plaintiff did just that. During the administrative hearing, counsel representing Plaintiff stated: "I believe the record is complete at this time." AR 36. In representing to the ALJ that the record was

complete, Plaintiff waived the issue for appeal and relieved the ALJ of any special duty of diligence.

Even if Plaintiff did not forfeit the claim, the Court concludes that the ALJ did not have a duty to the develop the record. An ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford*, 950 F.3d at 1156 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). Plaintiff does not show that the record was ambiguous or inadequate to allow for proper evaluation.

The ALJ summarized record evidence from 2017 through 2021. The summary includes what appears to be Plaintiff's complete treatment records relating to her psoriatic arthritis, including updated x-ray evidence. Indeed, Plaintiff confirms that the ALJ discussed records through the date of decision, *see* Doc. No. 23 at 20, and does not suggest that the records themselves are ambiguous or inadequate. Instead, Plaintiff's complaint is that no doctor reviewed medical findings after May 2019, including updated x-ray evidence. Doc. No. 23 at 20.

However, "[i]n virtually every case further evidence is received after the state agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing." *De Hoog v. Comm'r of Soc. Sec.*, No. 13-cv-0235-KJN, 2014 U.S. Dist. LEXIS 100712, at *22 (E.D. Cal. July 23, 2014). "The mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." *Sherri Lashawn K. v. Kijakazi*, No. 20-cv-1916-W-MDD, 2021 U.S. Dist. LEXIS 170308, at *8–*9 (S.D. Cal. Sep. 8, 2021) (internal citation omitted). Nor does it obligate the ALJ to obtain new medical opinion evidence. *See Steininger v. Colvin*, No. SACV 12-01968-SH, 2013 U.S. Dist. LEXIS 80896, at *6 (C.D. Cal. May 30, 2013) (rejecting argument that later MRI and imaging study created an ambiguity that required ALJ to obtain an updated medical opinion). Moreover, Plaintiff failed to submit any medical opinions from a treating or examining physician as to any manipulative limitations based on records dating after May 2019. Because it is Plaintiff's

burden to present evidence of disability, *see Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005), the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record.

In short, the ALJ considered the record evidence, including recent medical records concerning Plaintiff's psoriatic arthritis, weighed the evidence, and rendered findings supported by the record as a whole. The Court declines to impose a requirement that mandates updated medical opinions any time an ALJ receives new medical evidence.

## V.   CONCLUSION

Based on the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision.

**IT IS SO ORDERED**.

Dated:  September 17, 2024

_____
Honorable Valerie E. Torres
United States Magistrate Judge